# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 07-235(1)&(2) (DWF/JSM) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Mohammed Hadi al Jebory (1), and Ahmed Hadi al Jebory (2), | |
| Defendants. | |

___

Tracy L. Perzel, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

Douglas A. Myren, Esq., counsel for Defendant Mohammed Hadi Al Jebory.

Thomas G. Dunnwald, Esq., Dunnwald & Peterson PA, counsel for Defendant Ahmed Hadi Al Jebory.

Frederick W. Knaak, Esq., Knaak & Kantrud, counsel for Petitioner, City of Fridley.

___

This matter is before the Court upon Defendants' separate objections to the Report and Recommendation of United States Magistrate Judge Janie S. Mayeron dated November 30, 2007, in which Magistrate Judge Mayeron recommended that: (1) Defendant Mohammed Hadi Al Jebory's Motion to Suppress Confessions and Statements be denied; (2) Defendant Mohammed Hadi Al Jebory's Motion to Suppress

Fruits of Search and Seizures be denied; (3) Defendant Ahmed Hadi Al Jebory's Motion to Suppress Statements be denied; (4) Defendant Ahmed Hadi Al Jebory's Motion for Suppressions of Search and Seizure Evidence be denied; and (5) Defendants' Joint Motion for *Franks* Hearing be granted.[1]  Each Defendant submitted objections to the Report and Recommendation.  Both Defendants seek to suppress evidence seized pursuant to warrant on the grounds that the corresponding search warrants were issued in violation of the principles set forth in *Franks v. Delaware*, 438 U.S. 154 (1978).  Accordingly, they object to the Magistrate Judge's recommended denial of Defendant Mohammed Hadi Al Jebory's Motion to Suppress Fruits of Search and Seizures and Defendant Ahmed Hadi Al Jebory's Motion for Suppressions of Search and Seizure Evidence.  In addition, Defendant Mohammed Hadi Al Jebory objects to the recommended denial of his Motion to Suppress Confessions and Statements and Defendant Ahmed Hadi Al Jebory objects to the Magistrate Judge's recommendation to deny his Motion to Suppress Statements.

The Court has conducted a *de novo* review of the record pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b).  Based upon the *de novo* review of the record, all of the arguments and submissions of the parties, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

---

[1] The Magistrate Judge held a *Franks* hearing on September 19 and 20, 2007.  (Doc. No. 87 at 15 n.7.)

**ORDER**

1.	Magistrate Judge Janie S. Mayeron's Report and Recommendation dated November 30, 2007 (Doc. No. 87) is **ADOPTED**.

Dated:  February 14, 2008         s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court

**MEMORANDUM**

The factual background of this matter is clearly set forth in the Report and Recommendation and is incorporated by reference for purposes of Defendants' objections.

**Motions to Suppress Evidence**

The Magistrate Judge correctly framed the issue before the Court:  namely, whether the Defendants have established by a preponderance of the evidence that Agent Scott Robinson (1) knowingly and intentionally, or with reckless disregard for the truth, included false information in, or excluded material information from, the search warrant affidavits; and if so, whether (2) the affidavits, excluding the false statements or including the missing material information, would not support a finding of probable cause.  *See Franks*, 438 U.S. at 155-56; *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986).  The Magistrate Judge considered several alleged misstatements and omissions in Agent Robinson's affidavits, including:  (1) Agent Robinson's use of the

abbreviation CI to identify Michael Gannaway; (2) Agent Robinson's explanation of CI's approach of Agent Robinson; (3) Agent Robinson's omission of Gannaway's criminal background and cooperation agreement; (4) Agent Robinson's reference to a CRI in the second controlled buy; (5) Agent Robinson's reference to Warsame Hussein Ismail ("Ismail") as a first-time citizen informant and omission of his criminal background, previous drug dealings, and payment arrangement; (6) reference to "Mo's Cell Phone"; (7) and reference to the vehicle used in the first controlled buy.

The Magistrate Judge concluded that none of the alleged misstatements or omissions rose to the level of a *Franks* violation. In addition, the Magistrate Judge concluded that even if the alleged misstatements were left out of, and the allegedly omitted information was included in, the affidavits, the reviewing judge's probable cause analysis would have been the same. The Court agrees with these conclusions and adopts the Magistrate Judge's recommendations to deny Defendant Mohammed Hadi Al Jebory's Motion to Suppress Confessions and Statements, Defendant Mohammed Hadi Al Jebory's Motion to Suppress Fruits of Search and Seizures, and Defendant Ahmed Hadi Al Jebory's Motion for Suppressions of Search and Seizure Evidence. Even so, the Court is compelled to comment on two of the alleged false statements and omissions.

First, the Court comments on Agent Robinson's reference to a CRI in the second controlled buy. In referencing the CRI, Agent Robinson omitted that the CRI was the same individual as the CI mentioned earlier in the affidavit, possibly creating the

4

impression that Agent Robinson was relying upon information provided by two separate informants. The Court finds this omission troubling and rejects the notion that it is simply the result of sloppy drafting. However, the Court also concludes that the omission is not clearly critical to the finding of probable cause and therefore does not amount to a *Franks* violation.

Second, the Court comments on Agent Robinson's reference to Ismail as a first-time citizen informant and the Agent's omission of Ismail's criminal background, previous drug dealings, and payment arrangement. Agent Robinson referenced Ismail as a first-time citizen informant after observing Ismail deliver drugs during two controlled buys. In addition, Agent Robinson failed to include certain details regarding Ismail's criminal record, previous drug dealings, and payment arrangement. The characterization of Ismail as a first-time informant was misleading and the Court rejects Agent Robinson's contention that he so described Ismail for Ismail's protection. In addition, the Court is troubled by the omission of Ismail's criminal record, previous drug dealings, and payment arrangement. However, the Court agrees with the Magistrate Judge that the misleading representation and omissions were not clearly critical to the finding of probable cause and therefore did not rise to the level of a *Franks* violation.

**Ahmed Hadi Al Jebory's Motion to Suppress Statements**

The Magistrate Judge also recommended denying Defendant Ahmed Hadi Al Jebory's Motion to Suppress Statements, concluding that his rights under *Miranda v.*

*Arizona*, 384 U.S. 436 (1966), were validly waived. The Court notes that there is no dispute that Defendant Ahmed Hadi Al Jebory expressly waived his *Miranda* rights at the beginning of the interview and proceeded to answer questions during the interview. Yet, Defendant Ahmed Hadi Al Jebory seeks to suppress the portion of his statement after he said "Yeah cause I have no more to say" roughly midway through the interview. A portion of the interview reads as follows:

> Q: . . . Um, how much of that cocaine was yours?
>
> A: None of it.
>
> Q: None of it?
>
> A: Mm-mmm (no).
>
> Q: Ok. You're not willing to accept responsibility for even a gram or two?
>
> A: I. I'm. I. me personally I'm not into that type of business. My brother might have used it personally for himself cause like in the past he has been known for, of using cocaine and stuff, but me personally I don't, it's not my type of drug.
>
> Q: Ok. I know you've been involved in selling it. I know that.
>
> A: How do you know that?
>
> Q: I'm not gonna say, but I know. I've watched you. Ok. So do you wanna be honest with me how much about that cocaine was yours?
>
> A: None of it.
>
> Q: You don't sell for your brother?
>
> A: Help him out, but I don't sell for him.

6

Q: Ok when you say help him out, what do you mean by help him out?

A: He has a family he's taking care of so I'll do anything for him, but I don't recall that I was going to sell, sell it like me going (inaudible) he'll just tell me to go drop something off and I'll go drop it off.

Q: Like drop something off, who weighs, you mean cocaine?

A: Yeah.

Q: Ok and.

A: I don't. I don't see any of it, sometimes, sometimes you just, you know you just, I'll come over, he'll be like here take this to such and such.

Q: Take this up to Walgreen's?

A: Sometimes there, I don't know.

Q: Take this up to Nelson's, take this up to Godfather's. Am I getting close?

A: So what am I being charged for?

Q: So, we'll, we'll get to that here in a second. So you, you help your brother out by running some of the cocaine to his customers? Would that be fair to say? And then you take the money back to your brother? Ok you're not saying anything now.

A: Yeah cause I have no more to say.

Q: You don't have no more to say? Ok. Let's switch, let's switch on that topic. Let's change topics. Ok the Harley Davidson motorcycle that was in the living room.

A: Mm-hmm (yes).

Q: One of the funniest things I've ever seen, a motorcycle sitting in the middle of a living room of a house in the wintertime. Um,

A: That I don't know nothing about.

7

> Q; You don't know nothing about the motorcycle? Ok. How about the cash that was in the shoebox in the closet?
>
> A: It's none of my business.
>
> Q: Ok well whose business is it?
>
> A: Not mine. I don't, I don't live in that house.
>
> Q: Ok. So how many times a week would you help your brother out? Once or twice or three or four or ten?
>
> A: (inaudible) I don't, that's not my, I told ya that's not my thing to do things like that. And more than likely you know he wouldn't put himself in that situation unless he in desperate need of things, you know if you, if you have a family you take care of em and that you're the man of the house and you're responsible for em and ah, sometimes you do what you gotta and if you're in a tight spot that's probably, he was probably in a tight situation.
>
> Q: The scale that was on the kitchen countertop there, whose scale was that?
>
> A: It wasn't mine. I don't know, it was probably a friend of his or something.

(Government Ex. 8 at 3-5.)

A defendant may invoke the right to remain silent either prior to or during an interrogation. *Miranda*, 384 U.S. at 473-74. To invoke the right to remain silent, one must make a "clear, consistent expression of a desire to remain silent." *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). The invocation must be neither ambiguous nor equivocal. *See Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir.

8

2001) (citing *Davis v. United States*, 512 U.S. 452, 458-59 (1994) (applying standard to invocation of right to counsel)).

Defendant Ahmed Hadi Al Jebory's silence and comment "Yeah cause I have no more to say" in response to a question about his involvement in selling drugs with his brother was not an unequivocal assertion of his right to remain silent. Prior to that comment, Defendant Ahmed Hadi Al Jebory denied that he sold drugs for his brother, but indicated that he did "[h]elp him out." Agent Robinson inquired into the meaning of "help him out." After answering several questions regarding the "help" he provided his brother, Defendant Ahmed Hadi Al Jebory became silent and said "Yeah cause I have nothing more to say." Agent Robinson responded, "You don't have more to say? Ok. Let's switch, let's switch on that topic. Let's change topics. Ok the Harley Davidson motorcycle that was in the living room." Agent Robinson then proceeded to ask questions, which Defendant Ahmed Hadi Al Jebory answered without ever indicating a desire to remain silent.

The comment "Yeah because I have no more to say," viewed in the context in which it was spoken and in light of Defendant Ahmed Hadi Al Jebory's responses to numerous prior questions, was not a clear and consistent expression of an intent to remain silent. It is more reasonable to interpret the comment as an indication that Defendant Ahmed Hadi Al Jebory had nothing more to say in response to that particular topic or question. This interpretation is supported by Defendant Ahmed Al Jebory's willingness

to immediately answer additional questions posed to him throughout the remainder of the interview. Because Defendant Ahmed Hadi Al Jebory did not clearly invoke his right to remain silent, further questioning was permissible.

D.W.F.